IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| JESSICA OSBORNE, § | |
| § | |
| Plaintiff, § | |
| § | |
| V. § | No. 14-cv-1299-BN |
| § | |
| CAROLYN W. COLVIN, § | |
| Acting Commissioner of Social Security, § | |
| § | |
| Defendant. § | |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Jessica Osborne seeks judicial review of a final adverse decision of the Commissioner of Social Security pursuant to 42 U.S.C. § 405(g). For the reasons explained below, the hearing decision is affirmed.

**Background**

Plaintiff alleges that she is disabled due to a crushed vertebrae back injury and bipolar disorder. *See* Administrative Record [Dkt. No. 10 ("Tr.")] at 116. After her applications for disability insurance benefits and supplemental security income ("SSI") benefits were denied initially and on reconsideration, Plaintiff requested a hearing before an administrative law judge ("ALJ"). That hearing was held on October 17, 2012. *See id.* at 26-39. At the time of the hearing, Plaintiff was thirty years old. *See id.* at 28. She has a high school equivalency diploma and past work experience as a delicatessen counter worker, housekeeper, and server. *See id.* at 29-30, 36-37. Plaintiff has not engaged in substantial gainful activity since June 1, 2010. *See id.* at 12.

The ALJ found that Plaintiff was not disabled and therefore not entitled to disability or SSI benefits. Although the medical evidence established that Plaintiff suffered from migraine headaches, lumbar syrinx/chiari malformation, and bipolar disorder, the ALJ concluded that the severity of those impairments did not meet or equal any impairment listed in the social security regulations. *See id.* at 11, 14. The ALJ further determined that Plaintiff had the residual functional capacity to perform a limited range of sedentary work but could not return to her past relevant employment. *See id.* at 16, 20. Relying on a vocational expert's testimony, the ALJ found that Plaintiff was capable of working as an order clerk for telephone room service, surveillance monitor, and addresser – jobs that exist in significant numbers in the national economy. *See id.* at 19-20.

Plaintiff appealed that decision to the Appeals Council. The Council affirmed.

Plaintiff then filed this action in federal district court. Plaintiff challenges the hearing decision on two general grounds: (1) the ALJ failed to properly consider all of Plaintiff's severe impairments, and (2) substantial evidence does not support the ALJ's finding that she can perform other work in the national economy.

The Court determines that the hearing decision should be affirmed in all respects.

## Legal Standards

Judicial review in social security cases is limited to determining whether the Commissioner's decision is supported by substantial evidence on the record as a whole and whether Commissioner applied the proper legal standards to evaluate the

evidence. *See* 42 U.S.C. § 405(g); *Copeland v. Colvin*, 771 F.3d 920, 923 (5th Cir. 2014); *Ripley v. Chater*, 67 F.3d 552, 555 (5th Cir. 1995). Substantial evidence is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *accord Copeland*, 771 F.3d at 923. The Commissioner, rather than the courts, must resolve conflicts in the evidence, including weighing conflicting testimony and determining witnesses' credibility, and the Court does not try the issues *de novo*. *See Martinez v. Chater*, 64 F.3d 172, 174 (5th Cir. 1995); *Greenspan v. Shalala*, 38 F.3d 232, 237 (5th Cir. 1994). This Court may not reweigh the evidence or substitute its judgment for the Commissioner's but must scrutinize the entire record to ascertain whether substantial evidence supports the hearing decision. *See Copeland*, 771 F.3d at 923; *Hollis v. Bowen*, 837 F.2d 1378, 1383 (5th Cir. 1988). The Court "may affirm only on the grounds that the Commissioner stated for [the] decision." *Copeland*, 771 F.3d at 923.

"In order to qualify for disability insurance benefits or [supplemental security income], a claimant must suffer from a disability." *Id.* (citing 42 U.S.C. § 423(d)(1)(A)). A disabled worker is entitled to monthly social security benefits if certain conditions are met. *See* 42 U.S.C. § 423(a). The Act defines "disability" as the inability to engage in substantial gainful activity by reason of any medically determinable physical or mental impairment that can be expected to result in death or last for a continued period of 12 months. *See id.* § 423(d)(1)(A); *see also Copeland*, 771 F.3d at 923; *Cook v.*

3

*Heckler*, 750 F.2d 391, 393 (5th Cir. 1985). The Commissioner has promulgated a five-step sequential evaluation process that must be followed in making a disability determination:

1. The hearing officer must ascertain whether the claimant is engaged in substantial gainful activity. A claimant who is working is not disabled regardless of the medical findings.

2. The hearing officer must determine whether the claimed impairment is "severe." A "severe impairment" must significantly limit the claimant's physical or mental ability to do basic work activities. This determination must be made solely on the basis of the medical evidence.

3. The hearing officer must decide if the impairment meets or equals in severity certain impairments described in Appendix 1 of the regulations. The hearing officer must make this determination using only medical evidence.

4. If the claimant has a "severe impairment" covered by the regulations, the hearing officer must determine whether the claimant can perform his or her past work despite any limitations.

5. If the claimant does not have the residual functional capacity to perform past work, the hearing officer must decide whether the claimant can perform any other gainful and substantial work in the economy. This determination is made on the basis of the claimant's age, education, work experience, and residual functional capacity.

*See* 20 C.F.R. § 404.1520(b)-(f); *Copeland*, 771 F.3d at 923 ("The Commissioner typically uses a sequential five-step process to determine whether a claimant is disabled within the meaning of the Social Security Act. The analysis is: First, the claimant must not be presently working. Second, a claimant must establish that he has an impairment or combination of impairments which significantly limit [her] physical or mental ability to do basic work activities. Third, to secure a finding of disability

4

without consideration of age, education, and work experience, a claimant must establish that his impairment meets or equals an impairment in the appendix to the regulations. Fourth, a claimant must establish that his impairment prevents him from doing past relevant work. Finally, the burden shifts to the Secretary to establish that the claimant can perform the relevant work. If the Secretary meets this burden, the claimant must then prove that he cannot in fact perform the work suggested." (internal quotation marks omitted)); *Audler v. Astrue*, 501 F.3d 446, 447-48 (5th Cir. 2007) ("In evaluating a disability claim, the Commissioner conducts a five-step sequential analysis to determine whether (1) the claimant is presently working; (2) the claimant has a severe impairment; (3) the impairment meets or equals an impairment listed in appendix 1 of the social security regulations; (4) the impairment prevents the claimant from doing past relevant work; and (5) the impairment prevents the claimant from doing any other substantial gainful activity.").

The claimant bears the initial burden of establishing a disability through the first four steps of the analysis; on the fifth, the burden shifts to the Commissioner to show that there is other substantial work in the national economy that the claimant can perform. *See Copeland*, 771 F.3d at 923; *Audler*, 501 F.3d at 448. A finding that the claimant is disabled or not disabled at any point in the five-step review is conclusive and terminates the analysis. *See Copeland*, 771 F.3d at 923; *Lovelace v. Bowen*, 813 F.2d 55, 58 (5th Cir. 1987).

In reviewing the propriety of a decision that a claimant is not disabled, the Court's function is to ascertain whether the record as a whole contains substantial

5

evidence to support the Commissioner's final decision. The Court weighs four elements to determine whether there is substantial evidence of disability: (1) objective medical facts; (2) diagnoses and opinions of treating and examining physicians; (3) subjective evidence of pain and disability; and (4) the claimant's age, education, and work history. *See Martinez*, 64 F.3d at 174.

The ALJ has a duty to fully and fairly develop the facts relating to a claim for disability benefits. *See Ripley*, 67 F.3d at 557. If the ALJ does not satisfy this duty, the resulting decision is not substantially justified. *See id.* However, the Court does not hold the ALJ to procedural perfection and will reverse the ALJ's decision as not supported by substantial evidence where the claimant shows that the ALJ failed to fulfill the duty to adequately develop the record only if that failure prejudiced Plaintiff, *see Jones v. Astrue*, 691 F.3d 730, 733 (5th Cir. 2012) – that is, only if Plaintiff's substantial rights have been affected, *see Audler*, 501 F.3d at 448. "Prejudice can be established by showing that additional evidence would have been produced if the ALJ had fully developed the record, and that the additional evidence might have led to a different decision." *Ripley*, 67 F.3d at 557 n.22. Put another way, Plaintiff "must show that he could and would have adduced evidence that might have altered the result." *Brock v. Chater*, 84 F.3d 726, 728-29 (5th Cir. 1996).

## Analysis

I. <u>The ALJ did not fail to consider all of Plaintiff's severe impairments.</u>

In her first issue, Plaintiff contends that the ALJ failed to consider all of Plaintiff's severe impairments. Specifically, Plaintiff argues that the ALJ failed to make a finding regarding the severity of her back impairment at step two of the sequential analysis and that, as a result, remand is required because it is unclear whether the ALJ would have further limited Plaintiff's residual functional capacity to sit, stand, walk and lift if the ALJ had found Plaintiff's crushed vertebra to be a severe impairment.

At step two, the ALJ found that Plaintiff's migraine headaches, lumbar syrinx/chiari malformation, and bipolar disorder were severe impairments. The ALJ also discussed Plaintiff's back disorder. Both the ALJ and Plaintiff refer to the July 16, 2011 report of consulting expert Robert Newberry, M.D. for medical evidence concerning Plaintiff's back. *See* Tr. at 12-13, 15, 193-99; Dkt. No. 23 at 5. Dr. Newberry noted Plaintiff's history of low back pain since 2006 when she suffered a crushed L1 vertebra in a motor vehicle accident. Plaintiff reported chronic stabbing and sharp pain and rated her chronic pain at five on a one-to-ten pain scale most days and at an eight to nine on the examination day. She treated the pain with Ibuprofen. Dr. Newberry observed that Plaintiff had an antalgic posture and a slow, antalgic gait. She was able to lift, carry, and handle light objects. She was unable to squat and rise from the squatting position but was able to rise from a chair. She had some difficulty getting on and off the examination table. She was unable to walk on heels and toes, but her

7

tandem walk was normal. She could stand but not hop on either foot bilaterally. Plaintiff had a decreased range of motion of the thoracolumbar: flexion 45 degrees, extension 20 degrees, lateral flexion 20 degrees bilaterally, and rotation 20 degrees bilaterally. Her range of motion was normal in all other areas, and a review of systems was normal. Dr. Newberry reviewed an x-ray of the lumbar spine, which showed a partially crushed L1 vertebrae. Dr. Newberry diagnosed Plaintiff with a partially crushed L1 vertebrae secondary to a motor vehicle accident. *See* Tr. at 12, 193-97.

Dr. Newberry opined that Plaintiff has mild limitations with sitting and moderate limitations with standing and walking due to the crushed vertebrae but that she does not need an assistive device. Dr. Newberry also opined that Plaintiff has moderate limitations with lifting and carrying weight due to the crushed vertebrae. Dr. Newberry opined that Plaintiff has limitations on bending, stooping, crouching, and squatting due to the crushed vertebrae but that Plaintiff would be able to perform those activities occasionally. Dr. Newberry opined that there were no manipulative limitations and that Plaintiff would be able to frequently reach, handle, grasp, and finger. And Dr. Newberry opined that Plaintiff has no environmental limitations. *See id.* at 197-98.

The ALJ discussed Dr. Newberry's opinions in his decision. The ALJ also explained that he assigned Dr. Newberry's opinions partial weight by assigning a residual functional capacity ("RFC") with occasional postural limitations and some manipulative limitations but little weight concerning sitting, walking, standing, and lifting "because these limitations were expressed in vague language." *Id.* at 12-13.

8

The ALJ also discussed Plaintiff's back disorder at step three. According to the ALJ, the medical evidence does not establish the requisite evidence of nerve root compression, spinal arachnoiditis, or lumbar spinal stenosis to meet the severity requirements of listing 1.04 (disorders of the spine), and there is no evidence that Plaintiff's back disorder has resulted in an inability to ambulate effectively, as defined in listing 1.00(B)(2)(b). *See id.* at 14-15; *see also* 20 C.F.R. Pt. 404, Subpt. P, App. 1 (S.S.A. July 20, 2015) (Listing of Impairments).

The ALJ found that Plaintiff has the RFC to lift up to ten pounds occasionally and less than ten pounds frequently, to stand and walk for two hours in an eight-hour work day, and to sit for six hours in an eight-hour work day. Plaintiff requires the ability to stand, stretch, and change positions for a few minutes every thirty to forty-five minutes. Plaintiff should never crawl, climb, or use ladders, ropes, scaffolds, stairs, or ramps. Plaintiff may occasionally balance, kneel, stoop, crouch, bend, and squat. Plaintiff should avoid overhead reaching and is limited to frequent handling and fingering. Plaintiff should avoid exposure to heat and cold extremes, wet and humid environments, hazards, heights, hazardous machinery, vibrations, fumes, and odors. With respect to noise, Plaintiff requires a quiet office setting environment. Plaintiff has the ability to understand, remember, and carry out short and simple tasks and instructions. Plaintiff should avoid assembly-type work or forced-pace speed work. And Plaintiff should avoid work with the public and have no more than occasional work with co-workers and supervisors. *See* Tr. at 16.

Plaintiff points to no evidence that her crushed vertebrae precluded employment. To the contrary, the record shows that Plaintiff sustained the crushed vertebrae injury in 2006 and that she continued working after this injury until June 1, 2010, *see id.* at 111-13, 116, 124, and she was performing light- and medium-exertional level jobs between 2006 and 2010, *see id.* at 36-37, 111-13, 149. "An impairment can be considered as not severe only if it is a slight abnormality [having] such minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education, or work experience." *Stone v. Heckler*, 752 F.2d 1099, 1011 (5th Cir. 1985); *see also Easom v. Colvin*, No. 3:12-cv-1289-N-BN, 2013 WL 2458540, at *6 (N.D. Tex. June 7, 2013) (citing *Shave v. Apfel*, 238 F.3d 592, 596 (5th Cir. 2001) (no evidence that an alleged impairment precluded employment supported finding that impairment was not severe). The ALJ also noted that Plaintiff took an over-the-counter medication for back pain, *see* Tr. at 17, 171, 197, which suggest that the severity of pain was not so great as to preclude employment, *see Griego v. Sullivan*, 940 F.2d 944-45 (5th Cir. 1991).

Even though the ALJ did not make a specific finding concerning the severity of Plaintiff's back impairment, he did consider that impairment at both steps two and three and he included limitations in the RFC to accommodate it. Thus, the Court concludes that substantial evidence supports the implied finding of non-severity.

Moreover, if there were error concerning the ALJ's findings or lack thereof, it would not be prejudicial. Remand is not warranted when, even where the ALJ did not

explicitly determine the severity of certain impairments, the ALJ proceeded to later steps of the analysis. *See Herrera v. Astrue*, 406 F. App'x 899, 903 (5th Cir. 2010) (declining to remand where "case did not turn on a finding that [plaintiff's] impairments were not severe at step two"); *Adams v. Bowen*, 833 F.2d 509, 512 (5th Cir. 1987) (ALJ's failure to make a severity finding at step two not a basis for remand where ALJ proceeded to later steps of the analysis); *see also Mays v. Bowen*, 837 F.2d 1362, 1365 (5th Cir. 1988) ("[I]f the ALJ proceeds past the impairment step in the sequential evaluation process the court must infer that a severe impairment was found.").

II.  <u>The ALJ's step-five finding is supported by substantial evidence.</u>

In her second issue, Plaintiff challenges the ALJ's finding that she is not disabled because she has the RFC to perform jobs that exist in significant numbers in the national economy. Specifically, Plaintiff argues that the ALJ erred by relying on the testimony of a vocational expert ("VE") that conflicted with the *Dictionary of Occupational Titles* ("DOT").

At the hearing, the ALJ posed a hypothetical question to the VE incorporating the limitations in the RFC that the ALJ ultimately adopted, including "the ability to understand, carry out and remember short and simple tasks and instructions," the need for "a quiet office environment," and "nonpublic work ... with just occasional coworker or supervisory interaction." *See* Tr. at 37. The VE responded that a hypothetical person with Plaintiff's age, education, work experiences, and stated

11

limitations could not perform Plaintiff's past work but could perform the jobs of wait service telephone worker, surveillance monitor, and addresser. *See id.* at 38. The VE testified that all three jobs were sedentary and were classified as SVP 2. *See id.* In response to the ALJ's follow-up question asking if a hypothetical person with the previously described limitations who also had significant difficulties of completing a normal workday or workweek without significant interruptions from migraine issues would be competitive at those jobs, the VE answered that she would not be competitive. *See id.* The ALJ then asked the VE if there was any conflict between his testimony and the information in the DOT, and the VE responded that there was not. *See id.* Plaintiff's attorney was given the opportunity to but did not cross-examine the VE. *See id.*

At step four, the ALJ found that Plaintiff cannot perform past relevant work. *See* Tr. at 20. At step five, relying on the VE' testimony, the ALJ found that Plaintiff could perform the jobs of telephone room service order clerk, surveillance monitor, and addresser. *See* DICTIONARY OF OCCUPATIONAL TITLES § 209.567-014 (order clerk, food and beverage service), 1991 WL 671794; § 379.367-010 (surveillance-system monitor), 1991 WL 673244; § 209.587-010 (addresser), 1991 WL 671797 (Rev. 4th ed. 1991) (available at www.westlaw.com (database DICOT)). The ALJ described all three jobs as unskilled, sedentary work. *See id.* at 21.

Plaintiff asserts that, according to the DOT, the job requirements for the jobs identified by the VE are inconsistent with the ALJ's RFC finding that Plaintiff has "the

12

ability to understand, carry out and remember short and simple tasks and instructions" and the need for "a quiet office environment" and "nonpublic work ... with just occasional coworker or supervisory interaction." *See* Tr. at 37. Plaintiff argues that an individual who is limited to understanding, carrying out, and remembering short and simple tasks and instructions cannot perform jobs that require a reasoning level of "3," including the jobs of order clerk and surveillance monitor identified by the VE. Plaintiff also argues that an individual who is limited in her ability to work with people cannot perform jobs that require significant contact with people, including the jobs of order clerk and surveillance monitor identified by the VE, and an individual who is limited to working in a quiet office environment cannot perform jobs that are performed in a moderately loud office environment, including the job of addresser identified by the VE. The Commissioner responds that, because the requirements listed in the DOT are the maximum requirements for a position as it is generally performed and not the range of requirements of a particular job as it is performed in a specific setting, *see Jones v. Chater*, 72 F.3d 81, 82 (8th Cir. 1995), under the record in this case, the jobs identified by the VE do not conflict with the DOT.

The DOT was promulgated by the Department of Labor to provide "standardized occupational information to support job placement activities." DICTIONARY OF OCCUPATIONAL TITLES, Introduction, 1991 WL 645964 (S.S.A. 1991). The DOT, along with a companion volume – *The Selected Characteristics of Occupations Defined in the Revised Dictionary of Occupational Titles* ("SCO") – contain descriptions of the requirements for thousands of jobs in the national economy. Every job description in

13

the DOT includes a "general educational development" or "GED" designation describing the mental abilities that an employee needs to complete that job. GED "embraces those aspects of education (formal and informal) which are required of the worker." *Id.,* App. C, 1991 WL 688702. The GED scale is comprised of six levels designating the "reasoning development," "mathematical development," and "language development" needed to perform jobs at that level. *Id.* The GED reasoning levels range from level 1, which requires a worker to "[a]pply commonsense understanding to carry out simple one- or two-step instructions" and to "[d]eal with standardized situations with occasional or no variable in or from these situations encountered on the job," to level 6, which requires a worker to "[a]pply principles of logical or scientific thinking to a wide range of intellectual and practical problems" and to "[d]eal with nonverbal symbolism (formulas, scientific equations, graphs, musical notes, etc.) in its most difficult phases," as well as to "[d]eal with a variety of abstract and concrete variables" and "[a]pprehend the most abstruse class of concepts." *Id.* A job with a GED reasoning level of 3 requires the worker to "[a]pply commonsense understanding to carry out instructions furnished in written, oral, or diagrammatic form and deal with problems involving several concrete variable in or from standardized situations." *Id.*

Under the Social Security Rulings, occupational evidence provided by a VE generally should be consistent with the occupational information supplied by the DOT. *See* SSR 00-4p, 2000 WL 1898704 (S.S.A. Dec. 4, 2000). As part of the ALJ's duty to fully develop the record of the hearing, the ALJ "will inquire, on the record, as to whether or not there is such consistency." *Id.* at *5. When there is an apparent

14

unresolved conflict between VE evidence and the DOT, the ALJ must elicit a reasonable explanation for the conflict before relying on the VE evidence to support a determination of disability. *See id.* Neither the DOT nor the VE evidence automatically "trumps" the other when there is a conflict. *Id.* A conflict must be resolved by determining whether the explanation given by the VE is reasonable and provides a basis for relying on the VE testimony rather than on the DOT information. *See id.* The ALJ must explain in the determination or decision how any conflict that has been identified was resolved. *See id.* at *1.

In the Fifth Circuit, an ALJ may, in appropriate cases, give greater weight to expert vocational testimony than to findings in the DOT. *See Carey v. Apfel*, 230 F.3d 131, 146 (5th Cir. 2000). When a "direct and obvious" conflict exists between the VE's testimony and the DOT and the ALJ fails to explain or resolve the conflict, the testimony is "so lessened that reversal and remand for lack of substantial evidence usually follows." *Id.*; *see also Gaspard v. Soc. Sec. Admin., Comm'r*, 609 F. Supp. 2d 607, 613 (E. D. Tex. 2009). But, when the conflict is implied or indirect, and it did not undergo adversarial cross-examination at the hearing, the ALJ may rely on the VE's testimony without resolving the later-proposed conflict so long as the record reflects an adequate basis for doing so. *See Gaspard*, 609 F. Supp. 2d at 613 (citing *Carey*, 230 F.3d at 146).

A direct conflict may arise when the VE's testimony regarding the exertional or skill level of a particular job is facially different than that indicated in the DOT or

when the VE's testimony creates a conflict between the ALJ's RFC determination and the description of the jobs in the DOT. *See Carey*, 230 F.3d at 145. Conversely, all kinds of implied conflicts and exceptions occur under various unique circumstances when VEs are called on to testify as to an individual claimant's capabilities. *See id.* at 146-47. Because the DOT cannot satisfactorily address every such situation, claimants are not permitted to scan the record for implied or unexplained conflicts and then present the conflict as reversible error. *See id.*

The ALJ's RFC found Plaintiff had "the ability to understand, carry out and remember short and simple tasks and instructions," and, relying on the VE's testimony, the ALJ found that Plaintiff could perform the jobs of order clerk and surveillance monitor, both of which are classified as reasoning level three. There is a split of authority in the circuit courts as to whether a claimant limited to simple tasks is capable of performing jobs that the DOT classifies as reasoning level 3. *Compare Terry v. Astrue*, 580 F.3d 471, 478 (7th Cir. 2009) (finding no conflict between a job requiring reasoning level 3 and a claimant's limitation to simple work); *Renfrow v. Astrue*, 496 F.3d 918, 921 (8th Cir. 2007) (finding no apparent conflict with a claimant's inability to do complex work where the job identified required a reasoning level 3), *with Hackett v. Barnhart*, 395 F.3d 1168, 1176 (10th Cir. 2005) (finding a limitation to "simple and routine tasks" inconsistent with level 3 reasoning, but consistent with level 2). The Fifth Circuit has not addressed the issue, and the majority of district courts in the Fifth Circuit that have addressed the issue have held that a job with a

16

reasoning level of 3 is not necessarily inconsistent with an RFC determination that limits a claimant to the performance of simple, routine work tasks. *See McMillian v. Colvin*, No. 4:12-cv-661-A, 2014 WL 61172, at *5 & n.8 (N.D. Tex. Jan. 6, 2014) (citing cases).

Nevertheless, this Court need not resolve the conflict because the VE also opined that Plaintiff could perform work as an addresser, which requires reasoning level 2. Courts have repeatedly found that jobs with a GED reasoning development level 2 are consistent with limitations to simple instructions and routine tasks. *See Short v. Astrue*, No. 3:11-cv-713-N-BN, 2013 WL 655020, at *10 (N. D. Tex. Feb. 5, 2013) (citing cases); *see also Lara v. Astrue*, 305 F. App'x 324, 326 (9th Cir. 2008) ("To the extent the VE was overly broad and included jobs that [Plaintiff] could both perform and not perform, any error is harmless so long as the jobs that could be done are enough to support the ALJ's decision.").

And, under the record in this case, there is no direct conflict between the VE's testimony concerning the jobs of telephone room service order clerk or surveillance-system monitor and the DOT or the Plaintiff's RFC. According to the DOT, a telephone room service clerk is required to take orders and distribute order tickets to kitchen employees and may be required to collect charge vouchers and cash and keep a record of transactions. A surveillance monitor uses closed circuit television monitors to detect crimes and disturbances and notifies authorities by telephone of the need for corrective action or repairs. These job requirements do not conflict with the ALJ's RFC determination that Plaintiff has the ability to understand, carry out, and remember

17

short and simple tasks and instructions. Similarly, according to the DOT, the jobs of order clerk and surveillance monitor require dealing with people. A telephone room service order clerk is required to take food and beverage orders over the telephone, suggest menu items, substitutions for items not available, and answer questions regarding food or service. A surveillance monitor is required to notify authorities of the location of disruptive activity and repair service of equipment malfunctions. These requirements do not directly conflict with the ALJ's RFC that Plaintiff is limited to nonpublic work.

But there is an implied conflict between the VE's testimony and DOT and the ALJ's RFC finding as to the job of addresser. The DOT describes the noise level of an addresser job as "Level 3 - Moderate," while the ALJ's RFC limited Plaintiff to work in a quiet office environment. Nevertheless, Plaintiff has failed to demonstrate that the ALJ erred in relying on the VE's testimony in determining that Plaintiff retains the ability to perform sedentary, unskilled work, including the job of addresser. Once the Commissioner identifies alternative work the claimant can perform, the burden then shifts back to the claimant to show that she cannot do the identified work. *See Selders v. Sullivan,* 914 F.2d 614, 618 (5th Cir. 1990) (citing *Fraga v. Bowen,* 810 F.2d 1296, 1302 (5th Cir. 1987)); *see also Griffin v. Astrue*, No. 5:09-cv-44-C, 2010 WL 597817, at *4 (N.D. Tex. Feb. 19, 2010). Plaintiff has not shown that she is incapable of performing the jobs that the VE identified.

At the hearing, Plaintiff's attorney did not question the VE. *See* Tr. at 38. In these circumstances, Plaintiff cannot challenge in this Court any implied or indirect

18

conflict that she failed to raise at the hearing. *See Carey*, 230 F.3d at 146; *Pineda v. Astrue*, 289 F. App'x 710, 714 (5th Cir. 2008); *Johnson*, 2012 WL 5472418, at *15 (citing cases); *Slaughter v. Astrue*, 857 F. Supp. 2d 631, 646 (S.D. Tex. Mar. 8, 2012) ("Plaintiff had the burden to prove he could not perform the jobs set out by the vocational expert.").

Accordingly, the ALJ's step-five finding that Plaintiff is not disabled because she has the RFC to perform jobs that exist in significant numbers in the national economy was based on substantial evidence.

## Conclusion

The hearing decision is affirmed in all respects.

SO ORDERED.

DATED: August 12, 2015

_____
DAVID L. HORAN
UNITED STATES MAGISTRATE JUDGE